## THE PENNSYLVANIA RAILROAD COMPANY

### *v.*

### CHARLES R. STEVENSON, executor, &c., of Walter Earl, Jr., et al.

[Filed July 29th, 1902.]

1. When an impartial stakeholder brings a fund of which he holds custody, but in which he has no interest, into court, and also brings in hostile claimants, each of whom in good faith insists that he is entitled to the whole of the fund, an interpleader decree will not be refused the complainant because one claimant probably has the better right to the fund. The complainant's equity is that he, being impartial and willing to pay once to the rightful party, shall be protected from the necessity of deciding which is the rightful party, and from the expense and danger of defending several suits by hostile claimants of the fund.

Pennsylvania R. R. Co. *v.* Earl's Executor.

2. Moneys were deposited in a railroad employes' saving fund, upon certain conditions set forth in regulations printed in a deposit-book in which the amounts deposited were entered. One of the regulations declared that upon "satisfactory proof of the death of a depositor the money belonging to him shall be paid over only to the person designated in his application to receive the same." A depositor designated his wife as the person to whom, in the event of his death, his deposits should be paid. He afterwards made a will bequeathing all his estate to his executor upon certain named trusts, without special mention of the fund on deposit. On his death his wife, as the designated beneficiary, claimed the balance on hand, and the executor of his will also claimed it as his legatee.— *Held*, the deposit was a trust, the depositor was the donor, the railroad company a trustee, the regulations were the terms of the trust and the wife was the ultimate beneficiary, and that she is entitled to the balance of deposits on hand at the husband's death.

On bill of interpleader, answers and proofs.

*Mr. Alan H. Strong,* for the complainant.

*Mr. Thomas E. French,* for the defendant Charles R. Stevenson, executor, &c.

*Mr. William T. Boyle* and *Mr. John W. Wescott,* for the defendant Ellen V. Earl, widow.

GREY, V. C. (orally).

The bill of complaint is filed to obtain a decree that the defendants may interplead respecting their conflicting claims upon a fund which the complainant holds, but in which it has no interest.

The fund in question is a balance of money deposited with the complainant company's "Employes' Saving Fund" by Walter Earl, Jr., who died in February, 1901, testate. The defendant Stevenson is the executor of his will. The defendant Mrs. Ellen V. Earl is his widow. Each defendant claims to be the owner of the balance of the fund in the hands of the complainant company. The latter is a mere custodian, indifferent between the claimants, and, by this suit, brings the money and the claimants into court, asking that they interplead.

The counsel for the defendant Stevenson, executor of Earl,

while insisting on his right to the fund, admits that the complainant company has a *status* to ask for an interpleader decree.

The counsel for the defendant Mrs. Earl resists the complainant's claim to an interpleader, insisting that, on the face of the transaction, as exhibited by the pleadings, the complainant, by its own acknowledgment, is bound to pay the fund to Mrs. Earl; that there is no possible question of her right on which the complainant can ask the protection of this court, and that its bill should be dismissed.

The undisputed facts exhibited are these: The decedent, Earl, was an engineer in the complainant company's employ. The complainant inaugurated a saving fund depositary, whereby its employes might, subject to certain regulations, deposit moneys with the Pennsylvania Railroad Employes' Saving Fund, and receive a book in which the deposits were entered. By the regulations, withdrawals might be made, in a prescribed mode, by the depositor, the book being balanced with each withdrawal, so that it always showed the residue on deposit. Earl became a depositor by signing and delivering to the complainant company an application in these words:

"The Pennsylvania Railroad Employes' Saving Fund Depositary, at Camden, N. J. Station............ March 16th, 1888.

"*To the Superintendent of the Pennsylvania Railroad Employes' Saving Fund:*

"I, Walter Earl, Jr., of 204 York St., Camden, N. J., county of Camden, State of N. J., at present employed as...................Engineman on ........................Division or Dept., C. & A. Railroad, hereby express my desire to avail myself of the Pennsylvania Railroad Employes' Saving Fund, upon the terms and conditions set forth in its Regulations, as printed in the regular deposit book of the Fund.

"I agree that in the event of my death all deposits standing to my credit in said Saving Fund and all interest due thereon, shall be paid to my wife who resides at 204 York St., Camden, county of Camden, in the State of N. J., or, if not living, to my legal representatives.

"WALTER EARL, JR.

"Witness:
   "J. W. CALLAHAN,
      "Agent, Camden."

He received a book, which contained the printed regulations referred to in his application. At the end of these regulations, in the deposit-book, Earl signed this additional agreement:

"Camden, N. J., Station.                          March 20th, 1888.

"I, Walter Earl, Jr., of Camden, county of Camden, State of N. J., at present employed as Engineman, C. & A. Division, Penna. Railroad, having made application to become a depositor in The Pennsylvania Railroad Employes' Saving Fund, do hereby agree to be bound by the foregoing regulations, which I have read, or have had read to me.

                                                 "WALTER EARL, JR.

"Witness:
     "J. W. CALLAHAN,
          "Agent at Camden, N. J."

The first book was "No. E. 28," and was continued over into a second one, "No. E. 215." The first entry in the latter book being "1897, Jany. 1. Balance from book No. E. 28, $201.61." The balance in hand in the later book, at the date of the last item, is $1,578.08. This sum, amounting with interest thereon to $1,600.37, is the fund presently in dispute, which the complainant holds and fears to pay to either claimant.

Neither party defendant challenges the complainant's good faith and impartiality in its attitude of a stakeholder. Each party defendant claims a right to be paid the whole of the fund—Mrs. Earl by the effect of Mr. Earl's deposit of the fund for her benefit, and Mr. Stevenson by bequest under Mr. Earl's will, which he claims destroys any right Mrs. Earl might have had. The complainant stands ready to pay the fund to either, but cannot justly be required to pay it twice, and invokes the aid of this court to protect it from two hostile suits, in separate rights, to recover one fund.

The complainant, under such conditions, has an equity that it shall not be sued twice when it can have but one liability.

The counsel for the defendant Mrs. Earl advances, as his one objection to the protection of the complainant, the argument that the complainant's receipt of the money, accompanied by instructions to pay it to Mrs. Earl in case of Mr. Earl's death, makes the complainant's course so plain that it would be entirely safe in paying the fund to Mrs. Earl. But if it be admitted that Mrs. Earl probably has the better claim, and that she may ultimately show it, this does not relieve the complainant from its embarrassment meanwhile. The claim of Mr. Stevenson, as executor of Mr. Earl's will, that the will has de-

stroyed the deposit agreement, is admitted to be advanced and maintained in good faith. It will not be settled by any payment of the fund to Mrs. Earl. If that were done, the complainant would be certainly left to stand the expense of defending a suit brought by Mr. Stevenson, about a matter in which the complainant admittedly has no interest, with quite a possibility that a novel question may be decided against justifiability of its payment of the fund to Mrs. Earl. In which case the complainant would be obliged to pay the money over again to Mr. Stevenson as executor.

The complainant has no duty to decide between the respective contentions of these claimants upon the fund in its hands. It is entitled to be protected from both.

I will advise a decree that the complaint be dismissed, with its costs, and a fee allowed, according to the statute, upon depositing the fund in court.

The vice-chancellor then heard testimony as to the respective claims of the defendants upon the fund.

It was proven, on the part of Mrs. Earl, that Mr. Earl, in his lifetime, had delivered both the deposit-books to Mrs. Earl, telling her that here was the money, and that if he died it should go to her, and she could get it in ten days, by giving notice to the company. Both books contained agreements, signed by Mr. Earl, to the effect that the deposits made were subject to the printed regulations. The balance on the first deposit-book was carried over into the second one, and the first book was delivered up to the complainant company. Mrs. Earl retained possession of the second book until after Mr. Earl's death, and then gave it to the executor, Mr. Stevenson, at his request that she send him the book and keys. This was in March, 1901.

Argument was then heard upon the claims of the respective defendants to the fund, on their answers, admissions on the hearing and the testimony taken.

GREY, V. C. (orally).

The counsel for the defendant Mrs. Earl claims that the fund is in the nature of a matured insurance; that the complainant

received the deposits, compensated itself for its payments of interest on it by the use of the money, and agreed to pay it over to Mrs. Earl upon Mr. Earl's death.

The deposit scheme, as indicated by the application, the printed regulations and the agreement that they should be binding upon the depositors, lacks the elementary characteristics which attend upon an insurance. There is no undertaking, by the company, to compensate either Mr. or Mrs. Earl in case either should suffer a loss, by death or otherwise. The transaction was a deposit made by Mr. Earl with the company, for his own benefit to the extent that he observed a specified mode of withdrawal, and for Mrs. Earl's benefit as to any residue of the fund which remained at Mr. Earl's death.

This appears by his original application. He applied to be admitted to avail himself of the benefits of the fund "upon the terms and conditions set forth in its regulations, as printed in the regular deposit-book of the fund." In his application he declares:

"I agree that in the event of my death, all deposits standing to my credit in said Saving Fund and all interest due thereon, shall be paid to my wife, who resides at," &c.

The scheme, as shown by the regulations, is a plan whereby those of the company's employes who enter into it may save their money, have it available in case they may themselves choose to withdraw it in the specified mode, and be assured that, upon the death of anyone, the balance standing to his credit will be paid to the person whom he has named in his application. These are the general objects sought to be accomplished by the plan.

The regulations define the terms and conditions upon which the deposits were made. The very first one declares that the fund should be in charge of a superintendent appointed by the directors of the Pennsylvania Railroad Company. The depositor, by this, dispossessed himself of the money deposited. Then follow provisions for the convenient depositing of money by the employes, the entry thereof in a book given to the depositor, the forwarding to the company's office of duplex tickets

noting the deposit, and the allowance of interest to the depositor. There is a provision that depositors may withdraw money by giving ten days' notice, in the form of an order, which must be forwarded, with the depositor's book, to the superintendent of the fund. Upon receipt of the order and book, the superintendent enters in the deposit-book the amount to be withdrawn, deducting it from the total sum deposited, so as to show the balance after the withdrawal. The superintendent then issues an order on the treasurer of the Pennsylvania Railroad Company for the amount to be withdrawn, and sends it, with the book, for delivery to the depositor, who may draw the money on the order or deposit it in bank. The right is reserved to require thirty days' notice for the withdrawal of the entire amount credited to any account. In case any depositor becomes insane, or otherwise incapacitated to act, provision is made for the payment of so much of the deposit as may be necessary to meet the pressing wants of the incapacitated depositor or his wife or children.

The eighteenth regulation deals with the payment of the amount on deposit at the time of the death of the depositor, and is in these words:

"18. Upon the presentation to the Superintendent of the Fund of satisfactory proof of the death of a depositor, the money belonging to him shall be paid over only to the person designated in his application to receive same; or if the person so designated shall not be then living, said funds shall be paid either to the heirs or personal representatives of the deceased depositor as the Board may determine."

There is no provision anywhere in the regulations which authorizes the depositor to revoke or alter the terms and conditions set forth in the regulations, or to withdraw or dispose of the money deposited in any other manner than that prescribed by the regulations. They contain no provision whatever whereby "the person designated in the application" to receive the money remaining on deposit at the time of the depositor's death may be changed or the rights of such person may be in anyway affected by any act of the depositor, either *inter vivos* or by his will, except that he may withdraw the moneys in the mode

prescribed by the regulations, and in no other way. All moneys not so withdrawn at the time of his death, he has directed shall be paid "to the person designated in his application to receive the same." He has, by the express terms of his written agreement, denuded himself of all power to revoke or alter the disposition of the balance of the deposits made by him by his application and the applying regulations.

Notwithstanding the express direction of Mr. Earl, in his original application, that the balance of the deposit on hand at his death should be paid to his wife, and the explicit declaration of the eighteenth regulation that it "shall be paid over only to the person designated in the application to receive same," counsel for Mr. Stevenson insists that the fund passed, by Mr. Earl's will, to his executor. This contention necessarily rests upon the idea that the title to the fund remained, at all times, the property of Mr. Earl, subject to his dispoal (irrespective of the terms of the agreement) by any instrument efficient to pass his property.

Upon this construction of the transactions affecting this fund, Mr. Earl could have transferred, by assignment *inter vivos,* without observing any of the conditions imposed by the regulations. If the title to the deposit remained in Mr. Earl, it would, on his death, if he died testate, have passed under any general bequest of his personal estate, and if he died intestate, would have gone to his administrator, as part of the personalty whereof he died possessed. This view is destructive of the whole scheme contemplated and intended by the parties, and directly contrary to the expressed terms of their agreement.

In my judgment the effect of the agreements of the parties, and their action thereupon, was to create a trust. Mr. Earl, the donor, by his application, accepted the printed regulations as the definition of the terms of the trust. These were that the company would receive the money and pay interest on it; that Mr. Earl should be permitted to withdraw such sums as he might choose, by the observance of the mode prescribed in the regulations (which necessarily required that this should be done during his life), and that the portion of the fund not so withdrawn

should, at the time of his death, be paid to his wife. In directing the payment to be made to her, he considered the possibility that she might die before him, and provided that in such case the money should go to his legal representatives. Upon these trusts Mr. Earl deposited the money with the railroad company. He divested himself of his property in the deposit, and transferred it to the railroad company, as trustee, upon the trusts above indicated. He ceased to own the money, and became entitled to the right, under certain conditions, to withdraw it. The company accepted the trusts, and undertook the performance of them. Mr. Earl received from the company, the trustee, the deposit-book, which was, in effect, a statement of account of the trust moneys, and an ascertainment of the balance which was subject to his withdrawal, in the mode prescribed by the regulations, and which was payable to his wife in case he died without withdrawing the fund. This book Mr. Earl delivered to his wife, as the evidence of her right to receive the balance, telling her that if he died she could get it in ten days by giving notice to the company. If there were any doubt of Mrs. Earl's acquiring an interest in the fund, this delivery to her of the evidence of the creation and existence of the trust for her benefit should be held to have completed the gift. She has an equitable right to enforce her interest in the fund against the trustee, the railroad company. It is true the amount which she might receive might be diminished by Mr. Earl's withdrawals, in the mode prescribed by the regulations, but it is also true that, by the terms of the application and the regulations, the balance which might remain at Mr. Earl's death was payable only to her, as "the person designated in his application to receive the same." The time of payment to her was postponed until after Mr. Earl's death, and the amount was subject to diminution to the extent of any withdrawals he might make during his life, in the mode required by the regulations, and to be destroyed by her predeceasing Mr. Earl. Her right in any balance that might remain became vested in her on the creation of the trust, subject to be defeated in the modes prescribed by the terms of the trust, but in no other way.

It was a voluntary gift by the husband donor, in trust for

the benefit of his wife, completed by the donor's delivery of the property to a trustee, who accepted the trust and delivered the evidence of it, by the deposit-book and printed regulations, to the donor, who ratified and confirmed the trust, as to the wife's interest in it, by handing the deposit-book to her, and telling her it was for her benefit. No pecuniary consideration passing to the husband was necessary to make such a gift to the wife effectual. Title will pass by a voluntary gift, if completed, as effectually as by purchase.

The defendant executor insists that the provision for payment to the wife, after Earl's death, is, in legal effect, testamentary, and that none of the statutory observances, necessary to the execution of an effective will, appears. The case of *Reiff's Estate, 16 Pa. Supr. Ct. 80,* is cited as recognizing this construction of a like agreement and regulation of deposits, which came into litigation in Pennsylvania. The learned judge who pronounced that judgment did declare that the "writing is, in a sense, testamentary, in that it is intended to take effect only in the event of the death of the depositor." On this ground the learned judge held the direction for the payment to the wife of the balance of the fund remaining at the death of the depositor to be a revocable writing. He upheld the direction for payment to the wife, however, declaring that the terms of the will, as expressed, did not amount to a revocation.

With very great respect for the views there expressed upon this somewhat novel question, I am unable to accept this construction of the instruments under consideration. They seem to me, upon any ascertainment of the equities of the parties, to be, in effect, the creation of a trust, as above stated, passing title, at the time of the creation of the trust, out of the donor into the trustee, subject to the terms of the trust defined by the regulations, none of which reserve to the donor any right, in any mode, to take away the gift of the balance in hand, at his death, from the person whom he "designated in his application to receive the same."

In our own state there are several decisions in which a delivery, by the donor, of the subject-matter of a gift to a trustee, to be handed to a beneficiary in case of the donor's death, has

been held to be a complete transfer of the title, and not a testamentary act. In *Green* v. *Tulane, 7 Dick. Ch. Rep. 169,* Vice-Chancellor Pitney reviews the cases on the point, and concludes that a deposit, resembling the present case in principle, was a completed gift, and not a testamentary act. Reservation of payment of interest to the donor during his life was held not to have affected the trust to deliver the deposit after his death. So, in *Dennin* v. *Hilton, 50 Atl. Rep. 600,* the same learned vice-chancellor held that where a deposit was made by a donor in the joint names of herself and the donee, with a proviso that the survivor should draw the balance, the delivery of the deposit-books to the donee was an absolute delivery of the deposits, making a complete gift, notwithstanding the donor retained the right to draw the money deposited.

The gist of the question is whether the donor manifests, in the act of delivery, a complete donative purpose. If that is shown, the fact that precedent possibilities may diminish or even destroy the gift, if they happen, will not be permitted to defeat the donor's purpose, if they do not happen.

A decree will be advised according to the views above expressed.